UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| ORLANDO M. PERKINS, | ) |
| | ) |
| Movant, | ) |
| | ) |
| vs. | ) |
| | ) Case No. 1:04CV00155 ERW |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court upon *pro se* Movant Orlando M. Perkins' Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [doc. #1], filed on November 8, 2004. The Government filed its Response [doc. #5] on January 24, 2005, requesting this Court deny Movant's motion without an evidentiary hearing.

**I.   BACKGROUND FACTS**

On January 27, 2002, Movant entered a guilty plea to a six-count indictment. The first two counts charged the crime of distributing five or more grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1) (2000)[1] and punishable under 21 U.S.C. § 841(b)(1)(B) (2000)[2]. The third count charged the crime of aiding and abetting the distribution of cocaine base, in violation of 21 U.S.C. § 841(a)(1)

---

[1] 21 U.S.C. § 841(a)(1) states: "[I]t shall be unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance[.]"

[2] Under 21 U.S.C. § 841(b)(1)(B), a violation involving five or more grams of cocaine base is punishable by imprisonment from five to forty years.

1

and punishable under 21 U.S.C. § 841(b)(1)(C) (2000)³. The fourth, fifth, and sixth counts charged the distribution of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and punishable under 21 U.S.C. § 841(b)(1)(C).

The Plea Agreement and Stipulation of Facts states that as charged in Count I, Movant knowingly and intentionally sold 5.4 grams of cocaine base to a cooperating individual on November 21, 2001; that, as charged in Count II, he sold 6.29 grams of cocaine base on January 4, 2001; that, as charged in Count III, he sold 4.16 grams of cocaine base on September 22, 1999; that, as charged in Count IV, he sold 4.03 grams of cocaine base on August 20, 1999; that, as charged in Count V, he sold 3.45 grams of cocaine base on August 4, 1999, and that, as charged in Count VI, he sold .64 grams of cocaine base on July 30, 1999. According to the plea agreement, Movant agreed to waive all rights to contest the conviction or sentence in any post conviction proceeding, including a motion under § 2255, but reserved the right to appeal on grounds of ineffective assistance of counsel at the time of sentencing.

On October 27, 2003, Movant was sentenced to 168 months imprisonment. No direct appeal was filed. The present Motion under § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody was filed in the Court on November 8, 2004,⁴ alleging the following two grounds

---

³ Under 21 U.S.C. § 841(b)(1)(C), a violation involving a schedule I or II controlled substance is punishable by imprisonment for up to twenty years.

⁴ "A 1-year period of limitation shall apply to a motion under [§ 2255]." 28 U.S.C. § 2255. "[T]he one-year time limit for filing § 2255 motions is a statute of limitation and not a jurisdictional bar." *Moore v. United States of America*, 173 F.3d 1131, 1134 (8th Cir. 1999). "The limitation period shall run from . . . (1) the date on which the judgment of conviction becomes final". 28 U.S.C. § 2255 (1). Movant entered a guilty plea on July 28, 2003, and was

for appeal[5]:

> **Ground One:** Sixth Amendment Violation. Ineffective Assistance of Counsel at Plea Negotiation and Sentencing Phase.
>
> **Ground Two:** Fifth and Sixth Amendment Violations. Due Process and No Jury Finding.

The Court concludes that Movant's Motion can be conclusively determined based on the Motion, files and records in the case. Therefore, an evidentiary hearing for this Motion will not be conducted. *See Shaw v. United States,* 24 F.3d 1040,1043 (8th Cir. 1004). For the reasons set forth below, the Court concludes that both of the above Grounds are without merit. Accordingly, the Court will dismiss Movant's Motion under 28 U.S.C. § 2255 [doc. #1].

## II. STANDARD OF REVIEW: RELIEF UNDER 28 U.S.C. § 2255

A federal prisoner may seek relief from a sentence imposed against him on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. Accordingly, a § 2255 motion may be based upon violations of the Fifth and Sixth Amendments.

---

sentenced on October 27, 2003. Movant had ten days to file a notice of appeal after the sentencing date. Although the present § 2255 motion was not filed until November 8, 2004, *pro se* § 2255 motions are subject to the prison mailbox rule which deems the filing date to be the date on which the prisoner delivered his notice to prison authorities. *Houston v. Lack*, 487 U.S. 266, 270-71 (1988). Movant signed his Motion and placed it in the prison mailing system on October 27, 2004. ("Absent evidence to the contrary in the form of prison logs or other records, [the court] will assume that [Movant]'s motion was delivered to prison authorities the day he signed it". *Washington v. United States*, 243 F.3d 1299, 1301(11th Cir. 2001)). Consequently, the present Motion, deposited in the prison mailing system on October 27, 2004, is within the 1-year limitation period pursuant to § 2255.

[5] "[A]n ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003).

## III. ANALYSIS

**A. GROUND ONE  Sixth Amendment Violation.  Ineffective Assistance of Counsel at Plea Negotiation and Sentencing Phase.**

Here, Movant claims ineffective assistance of counsel at two separate stages of the criminal proceeding: plea negotiation and sentencing. However, in making his plea agreement, Movant waived certain rights to appeal or attack his conviction. The first issue is whether Movant's waiver of rights in the plea bargain precludes him from making a collateral attack under § 2255. The Plea Agreement and Stipulation of Facts Relative to Sentencing document reads as follows:

> in the event the Court accepts this plea agreement, the defendant further agrees to waive all rights to contest the conviction or sentence, **except for grounds for ineffective assistance of counsel at the time of sentencing**, in any post-conviction proceeding, including, but not limited to, a motion brought under 28 U.S.C. §§ 2241, 2255, and Rule 60(b) Fed. R. Civ. P. or by means of any other petition for relief of any description. (emphasis supplied).

Negotiated waivers of appellate rights and rights to pursue post-conviction relief have been upheld by the Eighth Circuit. *See United States v. Morrison*, 171 F.3d 567, 568 (8th Cir. 1999); *United States v. Michelsen*, 141 F.3d 867, 873 (8th Cir. 1998); *United States v. His Law*, 85 F.3d 379, 379 (8th Cir. 1996); *Rutan*, 956 F.2d at 829. Waivers of collateral attack rights, such as under § 2255, are similarly upheld. *DeRoo v. United States,* 223 F.3d at 923.

It is well-settled that a defendant may affirmatively waive particular constitutional rights. *See Boykin v. Alabama*, 395 U.S. 238, 243 (1969) (right to a jury trial, to confront and cross-examine witnesses, and to the Fifth Amendment privilege against self-incrimination); *Faretta v. California*, 422 U.S. 806, 836 (1975) (right to counsel). Specifically, plea bargaining is not unconstitutional even thought it waives important constitutional rights. *Newton v. Rumery*, 480 U.S. 386, 393 (1987).

The right to appeal is merely a statutory right, not a constitutional right. *Abney v. United*

*States*, 431 U.S. 651, 656 (1977). If defendants can waive fundamental constitutional rights, they are not precluded from waiving procedural rights granted by statute. *United States v. Rutan*, 956 F.2d 827, 829 (8th Cir. 1992) (citing *United States v. Wiggins*, 905 F.2d 51 (4th Cir. 1990)). Thus, a defendant may waive certain procedural appellate rights. *Id*. Accordingly, a defendant who pleads guilty and expressly waives the statutory right to raise objections to a sentence may not then seek to appeal the very sentence which itself was part of the agreement. *Id*.

The Eighth Circuit has determined that a waiver of a right to appeal is enforceable if the waiver is knowingly and voluntarily made, and the sentence imposed is in accordance with the negotiated agreement. *Rutan*, 956 F.2d at 829. However, such waivers are not absolute. For example, the Eighth Circuit has determined that defendants cannot waive their right to appeal an illegal sentence, which is a sentence imposed in violation of the terms of an agreement. *DeRoo*, 223 F.3d at 923. In addition, "the decision to be bound by the provisions of the plea agreement, including the waiver provisions, must be knowing and voluntary." *Id*. (citing *Morrison*, 171 F.3d at 568). Even when these conditions are met, however, a waiver will not be enforced where to do so would result in a miscarriage of justice. *United States v. Andis*, 333 F.3d 886, 890 (8th Cir. 2003).

The Eighth Circuit has held that the illegal sentence exception to the general enforceability of an appeal waiver is an extremely narrow exception. *Id.* at 891. Any sentence imposed within the statutory range is not subject to appeal. Specifically, an allegation that the sentencing judge misapplied the Sentencing Guidelines or abused his or her discretion is not subject to appeal in the face of a valid appeal waiver." *Id.* at 892. A sentence is illegal when it is not authorized by the judgment of conviction or when it is greater or less then the permissible statutory penalty for the crime. *Id*. (citing *United States v. Greatwalker*, 285 F.3d 727, 729 (8th Cir. 2002)).

Here, the waiver clearly allows Movant to make an ineffective assistance of counsel claim in a § 2255 motion for defects at the time of sentencing. However, because a guilty plea has been entered, the focus of a collateral attack under § 2255 is limited to the nature of counsel's advice and the voluntariness of the plea. *Bass v. United States*, 739 F.2d 405, 406 (8th Cir. 1984) (citing *Tollett v. Henderson*, 411 U.S. 258, 266 (1973)). According to the language of the waiver, Movant is barred from raising arguments that counsel was ineffective at the plea negotiation stage. However, such a waiver is unenforceable if it was made unknowingly and involuntarily due to ineffective assistance of counsel. *DeRoo v. United States*, 223 F.3d 919, 924 (8th Cir. 2000). Here, Movant claims that his waiver was not knowingly or voluntarily made. Therefore, it is appropriate to address the merits of Movant's § 2255 motion.

The next issue is whether Movant's § 2255 states a valid claim for ineffective assistance of counsel. As stated above, a § 2255 motion may be based upon a violation of the Sixth Amendment right to effective assistance of counsel. The United States Supreme Court has held that a showing of ineffective assistance of counsel requires that: 1) counsel's performance was deficient in that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment"; and 2) "counsel's deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Auman v. United States*, 67 F.3d 157, 162 (8th Cir. 1995). The test articulated in *Strickland* applies to guilty plea challenges premised upon allegations of ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). To prove the first prong of the test, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. When evaluating counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance." *Id.* at 689. Even if sufficient proof of the first prong exists, relief may only be obtained if a petitioner also proves that counsel's deficient performance prejudiced the case. *Id.* at 697. In order to satisfy the second prong, i.e., the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. The court may address the two prongs in any order, and if the petitioner fails to make a sufficient showing of one prong, the court need not address the other prong. *Strickland*, 466 U.S. at 697; *Fields v. United States*, 201 F.3d 1025, 1027 (8th Cir. 2000) (holding that "[i]f we can answer 'no' to either question, then we need not address the other part of the test.").

Movant asserts that he received ineffective assistance of counsel at the plea negotiation stage because his attorney coerced him into to pleading guilty to all six counts in the indictment. According to Movant, pleading guilty to all counts removed any leverage that he might have had in the plea negotiations. Movant additionally argues that this advice was defective because the government's evidence was insufficient to convict him of all six counts at trial. While Movant also asserts that he received ineffective assistance of counsel at the sentencing stage, he does not articulate any clear rationale for this claim. According to Movant, the result of this defective advice prevented him from making a knowing and voluntary decision to plead guilty.

For the following reasons, these arguments fail because Movant provides no specific act that shows that his counsel's conduct fell outside the range of reasonable performance. First, Movant's claim of coercion is belied by the Plea Agreement, which reads that "no person has, directly or indirectly, threatened or coerced him to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty."

7

Next, while Movant pled guilty to all six counts, he presents no evidence why this deprived him of all bargaining leverage. Instead, Movant's attorney received several concessions from the Government during the negotiations: according to the Plea Agreement, the Government agreed to recommend a sentence "not to exceed the midpoint range of punishment applicable to the defendant pursuant to the United States Sentencing Guidelines." In addition, Movant certainly benefitted from making the plea agreement: his sentence was 21 months less than if he was found guilty of all counts and received the maximum sentence.

Finally, Movant's allegation that his attorney should not have advised him to plead guilty due to the insufficiency of evidence against him is groundless. Movant makes no specific claim as to what evidence was either untrue or insufficient. According to the Plea Agreement, Movant even agreed to be held responsible for at least 500 grams, but less than 1.5 kilograms of cocaine base. Further, during Movant's change of plea hearing, the Assistant United States Attorney read into the record the Indictment and facts relating to the Counts charged in the Indictment. Movant indicated that he understood the charges and indicated that no threats or promises were made to him in exchange for his change of plea. Certainly, the mere allegation that his attorney should not have agreed to this amount cannot overcome the strong presumption that his counsel's conduct was adequate in making the Agreement.

This Court finds that Movant's counsel performed reasonably during the proceedings. Furthermore, it finds that Movant made his guilty plea knowingly and voluntarily. Because the first *Strickland* prong was not met, it is not necessary for the Court to address the second. Thus, Ground One is denied.

**B. GROUND TWO Fifth and Sixth Amendment Violations. Due Process and No Jury**

**Finding.**

    **1. Sixth Amendment Violation**

Movant's claim for relief under this ground is that his sentence was based upon uncharged facts not found by a jury beyond a reasonable doubt. Movant made no challenge to the indictment on direct appeal, and, as noted above, he waived the right to file a direct appeal. He now alleges that the indictment did not charge him with any specific amount of cocaine base, other than "five grams," and he was entitled to have a jury determine, beyond a reasonable doubt, the specific amount attributable to him.

First, Movant is incorrect that the indictment charged no more than five grams. Instead, the indictment charged that Movant "knowingly and intentionally distribute[d] five grams or more of cocaine base." Regardless of the amount stated in the indictment, the amount of cocaine base that Movant was ultimately held responsible for was a result of a joint recommendation made by both the Movant and the Government. The Plea Agreement indicates that the parties agreed that when the Court determined Petitioner's offense level, the parties recommended "[t]hat the amount of cocaine base the defendant is responsible for, including all relevant conduct U.S.S.G. Section 1B1.3, is at least 500 grams but less than 1.5 kilograms of cocaine base."

Second, Movant waived any right to appeal the judicial determination of facts relevant to the Sentencing Guidelines. According to the Plea Agreement:

> both the defendant and the Government hereby mutually agree to waive all rights to appeal whatever sentence is imposed, including any issues that relate to the establishment of the Guideline range, reserving only the right to appeal from an upward or downward departure from the Guideline range that is established at sentencing, which departure was not agreed

> to as part of this agreement. The District Court's decision as to all other issues shall not be subject to appeal.

Here, Movant's sentence was within the agreed upon limits under the Plea Agreement. Therefore, Movant waived any right to appeal the determination of the amount of drugs for which Movant was found responsible, as this factual determination relates to the establishment of the Guideline range. As stated in Ground One, this waiver is valid because it was knowingly and voluntarily made, and the sentence was imposed in accordance with the negotiated agreement. *United States v. Aronja-Inda*, 2005 WL 2124106 (8th Cir., Sept. 6, 2005); *United States v. Bolton*, 2005 WL 2243157 (8th Cir., Sept. 16, 2005).

A § 2255 motion is not a substitute for direct appeal; it is "intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." *Davis v. United States,* 417 U.S. 333, 343, 94 S.Ct. 2298, 2304, 41 L. Ed. 2d 109 (1974). Petitioners may not obtain § 2255 relief for "unopposed errors to which no contemporaneous objection was made" unless they can show both cause and prejudice. (internal citation omitted). *United States v. Wilson,* 997 F. 2d 432, 429, 431 (8th Cir. 1993). Here, Movant made no contemporaneous objection to the judicial determination of the amount of cocaine base Movant distributed. Moreover, Movant can show neither cause nor prejudice as to issues herein that should have been presented on direct appeal. Irrespective of Movant's waiver of appellate rights, the Court will otherwise address his arguments.

Movant relies on several recent United States Supreme Court decisions, arguing that they require the jury determination of facts relevant to the Sentencing Guidelines. In light of this argument, the Court will address the failure of Movant's Motion under an analysis of applicability of United States Supreme Court cases before and since Movant's sentencing hearing.

The United States Supreme Court, since the case of *Almendarez-Torres v. United States,* 523 U.S. 224 (1998) (Breyer), has repeatedly addressed issues relating to due process protection as it relates to a defendant's right to have certain issues decided by a jury, rather than a judge, along with the exceptions to be applied. The Court will attempt to briefly recognize the series of cases and make conclusions as to their individual applicability to Movant's action.

*Apprendi v. New Jersey,* 530 U.S. 466 (2000) (Stevens) involved a state statute classifying possession of a firearm for an unlawful purpose as a "second-Degree" offense which was punishable by imprisonment for "between five years and 10 years." A separate "hate-crime" statute provided for an extended term of between 10 and 20 years if the trial judge finds that the "defendant in committing the crime acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity." The Court concluded that the Due Process Clause of the Fourteenth Amendment requires that a factual determination authorizing an increase in the maximum prison sentence for an offense from 10 to 20 years be made by a jury with proof beyond a reasonable doubt. However, the Court recognized that "nothing in this history suggests that it is impermissible for judges to exercise discretion–taking into consideration various factors relating both to offense and offender –in imposing a judgment *within the range* prescribed by statute." Then, the Court cited the now famous words, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 2362,2363.

*Apprendi* was obviously decided before Movant entered a guilty plea or was sentenced. While the amount of Cocaine base for which Movant was responsible which he confessed to be at least 500 grams but less than 1.5 kilograms under Counts 1-6, this, as Movant claims, was not

11

charged in the indictment, or submitted to the jury for deliberation. The Court made the decisions by a preponderance of the evidence. However, at the time Movant was sentenced, the United States sentencing Guidelines were extant, and it was mandated that district judges make calculations under the United States Sentencing Guidelines, determining among many other issues that enhanced sentences, the identity and quantity of drugs for which a defendant would be responsible in finally assessing the Total Offense Level. Also, as stated above, Movant in the Plea Agreement admitted to distributing the amount of drugs that he was ultimately held responsible for. *Apprendi* did not proscribe a district court's responsibility in making decisions pertaining to sentencing under the United States Sentencing Guidelines.

*Ring v. Arizona,* 536 U.S. 584 (2002) (Ginsburg) overruled *Walton v. Arizona,* 497 U.S. 639 in deciding that a trial judge sitting alone could not decide the presence or absence of aggravating factors following a jury adjudication of defendant's guilt for imposition of the death penalty, for such conduct would violate a defendant's Sixth Amendment right to a jury trial in capital prosecutions. "Capital defendants, no less than noncapital defendants, we conclude, are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment." *Id.* at 2432. The Court concluded that based solely on the verdict finding Ring guilty of first-degree felony murder, the maximum punishment he could have received was life imprisonment, because in Arizona, a death sentence may not legally be imposed unless at least one aggravating factor is found to exist beyond a reasonable doubt. The Court found that such a factor could not be decided by a judge. "Because Arizona's enumerated aggravating factors operate as the functional equivalent of an element of a greater offense...the Sixth Amendment requires that they be found by a jury." *Id.* at 2443. The recidivism issue was not proscribed in the opinion. This case is

referenced to reflect its place in the line of cases that have restricted judicial factfinding.

Perhaps no opinion in recent times has caused as much sudden-impact discussion among members of the bar practicing criminal law, trial judges and appellate judges as *Blakely v. Washington,* 542 U.S. 296, 124 S. Ct. 2531 (2004) (Scalia). Blakely pleaded guilty in state court, where sentencing guidelines had been adopted, to the offense of kidnaping his estranged wife. The facts admitted in his plea, standing alone, supported a maximum sentence of 53 months. The sentencing judge imposed an "exceptional" sentence of 90 months concluding that Blakely had acted with "deliberate cruelty." The Supreme Court found a Sixth Amendment violation of Blakely's right to a trial by jury. Under the Washington State Sentencing Reform Act, Blakeley's offense of Second-degree kidnapping with a firearm had a "standard range" of 49 to 53 months. A judge could impose a sentence above the standard range if he or she found "substantial and compelling reasons justifying an exceptional sentence." The Court analyzed the facts pursuant to the *Apprendi* approach and found that the rule did not prevent a defendant from waiving his *Apprendi* rights. "When a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding." *Id.* at 2541. Any retroactive application of *Apprendi* would not help Movant, because he stipulated to the amount of drugs for which he was held responsible.

Finally, *United States v. Booker,* 125 S.Ct. 738 (2005) (Stevens, Breyer) concludes that the United States Sentencing Guidelines as mandatorily applied, violate the Sixth Amendment. Booker was charged with possession with intent to distribute at least 50 grams of cocaine base. The jury was advised that he had 92.5 grams of cocaine base in his duffel bag, and found him guilty of violating 21 U.S.C. 841 (a)(1), which prescribes a minimum sentence of 10 years in prison and a maximum

sentence of life for that offense. § 841 (b)(1)(A)(iii). Considering Booker's criminal history and the quantity of drugs found by the jury, the United States Sentencing Guidelines required the district judge to select a base offense level of not less than 210 months nor more than 262 months. After conducting a post-trial hearing the sentencing judge concluded by a "preponderance of the evidence" that Booker had possessed an additional 566 grams of crack and that he was guilty of obstructing justice, which findings mandated a sentencing range of between 360 months and life imprisonment.

Respondent Fanfan, whose case was consolidated with Booker on appeal, was charged with conspiracy to distribute and possess, with intent to distribute, at least 500 grams of cocaine in violation of 21 U.S.C. § 841 (a)(1) and 841 (b)(1) (B)(ii). A jury found him guilty, answering yes to the question of whether the amount of the cocaine exceeded 500 grams. Without additional findings his maximum sentence would have been 78 months.

Relying upon the recently decided *Blakely* opinion, the trial judge in *Fanfan* found additional facts that defendant was responsible for 2.5 kilograms of cocaine powder and 261.6 grams of crack. The judge found by a preponderance of the evidence that Fanfan was an organizer, leader, manager, or supervisor in the criminal activity which findings required enhancements of 15 or 16 years instead of the 5 or 6 years authorized by the jury. The judge concluded that he could not, under *Blakely,* sentence the defendant beyond the findings of the jury. The Government appealed. Justice Stevens, delivering the opinion of the Court, in part, reaffirmed *Apprendi.* Justice Breyer, delivering the opinion of the Court , in part, concluded that the Sixth Amendment requirement that the jury must find certain sentencing facts was inconsistent with the Federal Sentencing Reform Act, and that "18 U.S.C. § 3553(b)(1) (Supp. 2004) [is] incompatible with today's constitutional holding. We conclude that this provision must be severed and excised, as must one other statutory section, §3742 (e) (Main

ed. and Supp. 2004), which depends upon the Guidelines' mandatory nature. So modified, the Federal Sentencing Act, see Sentencing Reform Act of 1984, as amended, 18 U.S.C. § 3551 *et seq.,* 28 U.S.C. § 991 et *seq.* makes the Guidelines effectively advisory. *Booker* requires a sentencing court to consider Guidelines ranges, see 18 U.S.C.A. § 3553(a)(4) (Supp. 2004), but it permits the court to tailor the sentence in light of other statutory concerns as well, see § 3553 (a)(4). *Id.* at 756, 757. A standard of judicial review of "unreasonableness" was adopted. Cases on direct review fell under the umbrella of the ruling, and the ruling was otherwise not retroactively applied. There is no provision in *Booker* providing for retroactive review for post-conviction remedies. Movant contends that his Sixth Amendment rights were violated when the Court made factual determinations regarding drug quantity, thereby increasing his sentence. However, Movant's argument rests on the erroneous assumption that *Blakely*, as applied to federal sentencings in *Booker*, is retroactively applicable to cases on collateral review. This Court has concluded that *Booker* is not retroactively applicable to cases on collateral review. *See Never Misses a Shot v. United States*, 413 F.3d 781 (8th Cir., Jul. 7, 2005) (holding that *Booker* is not retroactively applicable to cases on collateral review); *Ray v. United States*, 140 Fed.Appx. 636 (8th Cir., Aug. 10, 2005) (same); *Ferrara v. United States*, 2005 WL 2207006 (8th Cir., Sept. 13, 2005) (same); *United States v. Deaton*, 2005 WL 1922877 (E.D. Ark., Aug. 9, 2005) (same).

The *Blakely* Court reserved decision about the status of the federal sentencing guidelines. 542 U.S. 296, 124 S. Ct. at 2538 n.9. However, the Supreme Court's subsequent decision in *United States v. Booker* applied the analysis of *Blakely* to the federal sentencing guidelines. 125 S. Ct. 738, 769 (2005) (holding that the federal sentencing guidelines are subject to jury trial requirements of the Sixth Amendment, and the provisions of the Federal Sentencing Act which make the guidelines

15

mandatory are unconstitutional). Because it was *Booker*, not *Blakely*, that applied to the federal sentencing guidelines, the Court's new rule became effective for federal sentencing on January 12, 2005, the day *Booker* was decided. *Never Misses a Shot*, 413 F.3d 781.

The *Booker* Majority did not address whether its new rule applied retroactively to cases on collateral review, however, the reasoning in the Supreme Court's decision in *Schriro v. Summerlin,* 542 U.S. 348, 124 S. Ct. 2519 (2004) is applicable here. *Summerlin* held that the Court's new rule in *Ring* was not retroactively applied to cases on collateral review. 542 U.S. 348, 124 S. Ct. at 2526 (citing *Ring,* 536 U.S. at 609. *Ring* held that a defendant is entitled to a jury trial on all aggravating factors that may lead to the imposition of capital punishment. *Ring*, 536 U.S. at 609. *Ring* and *Booker* both relied heavily on *Apprendi*, 530 U.S. at 490, which held that any fact that increases the penalty for a crime beyond the prescribed statutory maximum, other than the fact of a prior conviction, must be submitted to a jury and proved beyond reasonable doubt. In *Summerlin* the Court concluded that *Ring* cannot be treated as a new substantive rule because it did not "alter the range of conduct or the class of persons that the law punishes." 542 U.S. 348, 124 S. Ct. at 2523. The Court noted that "*Ring* altered the range of permissible methods for determining whether a defendant's conduct is punishable [in a particular way], requiring that a jury rather than a judge find the essential facts bearing on punishment. Rules that allocate decisionmaking authority in this fashion are prototypical procedural rules." *Id*.

Like *Ring*, *Booker* affects only the procedural issues of the identity of the fact finder and the quantity of evidence required to pass sentence, and does not alter the substance of what primary conduct is unlawful. Although the federal sentencing guidelines are no longer mandatory, district judges must continue to consult them when fashioning sentences. *Booker*, 125 S. Ct. at 767. No

"conduct" has been made lawful, and none of the many factors that affect sentences under the Sentencing Guidelines has been declared invalid. Consequently *Booker,* like *Apprendi* and *Ring,* must be treated as a procedural decision for the purposes of retroactivity analysis.

A procedural decision may be applied retroactively if it establishes one of those rare "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Summerlin,* 542 U.S. 348, 124 S.Ct. at 2524. The Court held in *DeStefano v. Woods* that fundamental fairness is not called into question when deciding between the judge or jury as fact-finder. 392 U.S. 631, 634 (1968). In *Summerlin,* the Court again addressed this issue noting that it is not clear which fact-finder is more accurate. 542 U.S. 348, 124 S. Ct. at 2525. In addition, the end result of *Booker* neither moves any decision from judge to jury, nor changes the burden of persuasion. *Booker* held that decisions about sentencing factors will continue to be made by judges so long as the guideline system is flexible in its application. 125 S. Ct. at 767. This minor modification to the sentencing procedure does not constitute a "watershed" change that fundamentally improves the fairness or accuracy of the criminal process. *See Summerlin,* 542 U.S. 348, 124 S. Ct. at 2522. Because *Booker* provides a new procedural rule that does not rise to the level of a "watershed" change, it is not retroactively applicable to cases on collateral review. *See Never Misses a Shot*, 413 F.3d 781. While Movant's argument would collapse under a *Booker* challenge, such analysis is unnecessary because the Movant's sentence precedes the Supreme Court's *Booker* opinion, and *Booker* cannot be retroactively applied. Movant was sentenced on October 27, 2003, and *Booker* was not decided until January 12, 2005, the Movant's case is not subject to a *Booker* challenge.

Even if *Booker* were retroactively applied to a collateral proceeding, the admission exception

17

carved out in *Blakely* prohibits Movant from obtaining relief. "When a defendant pleads guilty, the [Government] is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding." *Blakely*, 542 U.S. 296, 124 S. Ct. at 2541. Here, Movant contends that the drug quantity were judicially determined. Unlike *Booker*, where judicially-determined facts were used to increase the defendant's sentence without his consent, here Movant stipulated to the facts relevant in determining the length of his sentence. In the Plea Agreement, the parties agreed that Movant would be held responsible for at least 500 grams but less than 1.5 kilograms of cocaine base. Additionally, at the change of plea hearing, Movant stated that he understood that the maximum sentence he could receive under this stipulation of fact would be 179 months. Thus, the *Blakely* admission exception also precludes the application of *Booker* in this case.

Because Movant stipulated to the amount of drugs in the Plea Agreement, waived his right to make collateral attacks on his sentence under § 2255, and his argument relies on the erroneous assumption that *Blakely* is applicable retroactively, his Sixth Amendment argument is without merit.

**2. Fifth Amendment Violation**

Here, Movant alleges a violation of his Fifth Amendment right to a grand jury indictment charging each element of the offense. As stated above, this constitutional challenge is not valid because Movant waived his right of appeal. As stated in Ground One, this waiver is valid because it was knowingly and voluntarily made, and the sentence was imposed in accordance with the negotiated agreement. *Rutan*, 956 F.2d at 829. Furthermore, Movant may not receive relief pursuant to § 2255 after making no contemporaneous objection regarding the indictment. *Wilson,* 997 F. 2d at 431. Finally, Movant can show neither cause nor prejudice to overcome this lack of objection.

Therefore, Movant's Fifth Amendment argument is without merit.

Because both his Fifth and Sixth Amendment arguments are meritless, Ground Two is denied.

Accordingly,

**IT IS HEREBY ORDERED** that Movant Orlando M. Perkins' Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [doc. #1] is **DENIED**.

**IT IS FURTHER ORDERED** that the Court shall not issue a certificate of appealability as to any claim raised in Movant's § 2255 Motion.

Dated this 30th day of September, 2005.

E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE